IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELTON MAGEE, JR., ) | |
| ) | |
| *Plaintiff/Counterclaim Defendant,* ) | |
| ) | |
| v. ) | Case No. : 1:14-cv-00350 (EGS) |
| ) | |
| BAZILIO COBB ASSOCIATES, PC, ) | |
| (f/k/a Thompson, Cobb, Bazilio & Associates, Inc., ) | |
| ) | |
| *Defendant/Counterclaim Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| PROMESA CONSULTING GROUP, INC., ) | |
| ) | |
| *Counterclaim Defendant.* ) | |
| _____) | |

**PROMESA CONSULTING GROUP, INC.'S
MOTION TO DISMISS THE AMENDED COUNTERCLAIM**

Counterclaim Defendant Promesa Consulting Group, Inc. ("Promesa"), respectfully moves the Court to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Bazilio Cobb Associates, PC ("BCA") originally counterclaimed against plaintiff Felton Magee, Jr. for Magee's alleged breach of his employment agreement with BCA and for tortiously interfering with BCA's existing contract with a BCA client. In its Amended Counterclaim, BCA, in the most conclusory fashion, now asserts that Promesa, Magee's current employer, somehow induced Magee to breach his contract with BCA (Count III) and that Promesa, too, tortiously interfered with BCA's relationship with BCA's client (Count IV). But,

as to Count III, BCA fails to allege a single fact connecting Promesa to Magee's resignation; and, as to Count IV, BCA fails to allege the essential element that BCA's client breached its contract with BCA. Accordingly, the Court should dismiss the Amended Counterclaim for failure to state a claim.

## FACTS ALLEGED IN THE AMENDED COUNTERCLAIM

Magee was an employee of BCA and its predecessor from May 17, 2010 until February 15, 2014. *See* Am. Countercl. ¶ 2, BCA Am. Answer ¶ 15 (admitting termination date). BCA claims that Magee, in violation of his employment agreement, engaged in a series of actions designed to persuade BCA employees to terminate their employment with BCA. Among them, BCA alleges that Magee: told certain BCA employees they would be offered jobs at Promesa (Am. Countercl. ¶ 8); had these BCA employees describe their work for a BCA client in order to persuade that client that BCA would not be able to provide adequate services to it if the employees left BCA (Am. Countercl. ¶ 12-13); used a Promesa email account while still employed at BCA (Am. Countercl. ¶ 14); assigned Promesa email accounts to other BCA employees (*id.*); and instructed BCA employees to transfer BCA documents to a Promesa server site (Am. Countercl. ¶ 15). At the time, BCA alleges on information and belief that Magee was a Promesa shareholder. Am. Countercl. ¶ 9.

As to Promesa, the Amended Counterclaim adds a few additional threadbare statements. Promesa was formed in August 2013 by Larry Wilson, at the time a BCA employee. Am. Countercl. ¶ 34. BCA acknowledges being fully aware of Promesa's founding and areas of business—beginning in August 2013 it engaged in negotiations with Promesa to sell its management consulting practice, and BCA claims those negotiations ended in October 2013. *See* Am. Countercl. ¶¶ 35-36. BCA states that Promesa submitted a proposal to the Virgin

Islands Department of Health in January, 2014, in which it characterized Promesa as the former consulting services practice of BCA (Am. Countercl. ¶ 38), identified Magee as a Promesa executive (Am. Countercl. ¶ 39), and referenced work done by BCA as if it had been performed by Promesa (Am. Countercl. ¶ 40).  There is no allegation that Promesa's proposal to the Virgin Islands Department of Health has anything to do with work BCA provided to the Government of the Virgin Islands under BCA's existing Third Party Fiduciary Contract.  *See* Am. Countercl. ¶ 5.

## ARGUMENT

As the Court is aware, the Supreme Court has ruled that in order to survive a motion to dismiss, a complaint requires more than than an assertion that the defendant harmed the plaintiff.  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Although detailed factual assertions are not required, bare assertions devoid of any factual detail are insufficient. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. at 677-78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Instead, in order to survive a motion to dismiss, the complaint must contain sufficiently well-pleaded facts to state a plausible claim for relief.  *Id.* at 679.

BCA's Amended Counterclaim fails this test as to Count III, as the complaint alleges nothing as to how Promesa induced Magee to breach his employment contract with BCA. Further, as to Count IV, BCA fails to state a claim because it has not alleged that any actions by Promesa caused BCA's client to breach its contract with BCA, a necessary element of a tortious interference claim in the District of Columbia.

I.   **COUNT III FAILS TO ALLEGE ANY FACTS ESTABLISHING PROMESA'S TORTIOUS INTERFERENCE WITH MAGEE'S EMPLOYMENT AGREEMENT.**

Count III fails because nowhere in the Amended Counterclaim does BCA make a single factual allegation concerning Promesa's actions.  In this claim, BCA alleges: (i) that BCA's contract with Magee contained a non-compete provision (Am. Countercl. ¶ 43); (ii) that Promesa was aware of this contact (Am. Countercl. ¶ 44); and, importantly, (iii) that "Promesa acted intentionally to interfere with [BCA's] contract with Magee by inducing Magee to violate the non-compete provision" (Am. Countercl. ¶ 45).  Paragraph 45 is a classic legal conclusion masquerading as a factual allegation, and one searches the Amended Counterclaim in vain for *any* factual allegation to elaborate on *what* Promesa supposedly did to "act[] intentionally" to "induc[e]" Magee to breach his contract.  *See Libya v. Miski*, 889 F. Supp. 2d 144, 157 (D.D.C. 2012) ("As its name would suggest, *intentional* interference requires an element of intent.  Further, 'a general intent to interfere or knowledge that conduct will injure the [claimant's] business dealings is insufficient to impose liability.' [Claimant] cannot establish liability without a 'strong showing of intent' to disrupt ongoing business relationships." (citation omitted, alterations in original)); *Banneker Ventures, LLC v. Graham,* ___ F. Supp. 2d. ___, 2014 WL 471038, at * 12 (D.D.C. Feb. 6, 2014) ("A plaintiff cannot establish liability without a strong showing of intent to disrupt ongoing business relationships." (citation omitted)).  In the absence of any particular facts demonstrating that Promesa did anything at all concerning Magee's contract, much less the required "strong showing of intent," Count III fails for want of allegations showing the "further factual enhancement" required by *Iqbal.*  556 U.S. at 677-78.

## II. COUNT IV FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BCA'S CONTRACT WITH THE VIRGIN ISLANDS GOVERNMENT.

Count IV fails to state a claim for the same reasons expressed in Magee's Motion to Dismiss (Dkt. # 16), namely that the complaint fails to allege the essential element of the claim that the Government of the Virgin Islands actually breached its contract with BCA. "'Unlike in some jurisdictions, courts in the District of Columbia have held that a breach of contract is an essential element of' a tortious interference claim." *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 20-21 (D.D.C. 2011) (quoting *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 326 (D.C. 2008)). In *Patton Boggs,* Judge Kennedy held that, where the plaintiff "does not allege any facts suggesting that such a breach has occurred, the Court cannot "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 21 (quoting *Iqbal*, 556 U.S. at 678). This Court accordingly dismissed the tortious interference claim and found that further amendment to the claim would be futile. *Id.* Here, too, BCA pleads itself out of court, as it does not allege that any contract with the Virgin Islands government was breached. Instead, BCA claims that it was damaged by having to expend sums to "restor[e] its good business relationship with the Client." Am. Countercl. ¶ 56. That is not enough under District of Columbia law. Faced with the apparent continuation of the relationship between BCA and its client, BCA has no claim against Promesa.

In opposition to Magee's motion to dismiss on the same grounds (Dkt. # 17), BCA makes a surprising argument: that its claim is not for tortious interference with "contract," but for a supposedly distinct claim of tortious interference with BCA's present "business relations." There is no distinction between the two under District of Columbia law, and BCA's claims otherwise are incorrect. *Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012), cited by BCA for the supposed elements of its interference with "business relations" claim, still requires a plaintiff to

allege a breach or its equivalent: "To be actionable, the interference need not cause an actual breach of the business relationship, but instead may cause 'merely a failure of performance' by one of the parties." *Id.* at 286 (quoting *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003)).[1] Thus, BCA's statement that "no allegation of a failure to perform . . . is required in order to state a claim" is simply an incorrect statement of District of Columbia law.

Nor does *Intelsat U.S. Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101 (D.D.C. 2013), save BCA's claim, because BCA's citation to that case involves interference with *prospective business advantage*, not interference with contract. BCA cites *Intelsat* for the proposition that it need not allege any breach of contract (Dkt. # 17, at 4), but the case says precisely the opposite: "To assert a tortious interference with a contract claim, a plaintiff must allege: (1) the existence of a contract; (2) knowledge of the contract; (3) **intentional procurement of a breach of the contract**; and (4) damages resulting from the breach." *Intelsat*, 935 F. Supp. 2d at 115 (emphasis added) (citing *Casco Marina Dev.,* 834 A.2d at 83 (D.C. 2003) and *Paul v. Howard Univ.,* 754 A.2d 297, 309 (D.C.2000)). The *Intelsat* opinion then articulates the elements of the separate claim of tortious interference with prospective business advantage: "To establish a claim for tortious interference with prospective advantageous business transaction under D.C. law, a plaintiff must show: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Intelsat,* 935 F. Supp. 2d at 116 (citing *Bennett Enters. v. Domino's Pizza, Inc.,* 45 F.3d 493, 498 (D.C. Cir.1995)). That claim, too, requires allegation of a

---

[1]  *Casco Marina* involved a third-party's induced cancellation of a contract by its terms, as opposed to a breach. 834 A.2d at 83.

"breach" or "termination" of the expectancy by the third-party. Again, BCA alleges nothing of the sort, be it breach of contract or of legitimate business expectancy, and thus fails to state a claim on these grounds as well.

Ultimately, BCA is trying to save a claim that does not exist under District of Columbia law. A consistent line of D.C. cases requires a plaintiff to assert a third party's breach of contract or failure of performance in order to proceed with a tortious interference claim. This, BCA does not allege. BCA's entreaties to the Court to recognize a more liberal variant of this tort in accordance with the laws of Colorado, New York, Missouri, or Massachusetts (Dkt. # 17, at 6), are, as the Court knows, beyond the power of the Court to entertain. "A federal court sitting in diversity must apply state law to the substantive issues before it." *A.I. Trade Fin., Inc. v. Petra Int'l Bking. Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). Count IV, therefore, fails to state a claim.

## CONCLUSION

For the reasons set forth above, Counterclaim Defendant Promesa Consulting Group, Inc. respectfully requests that the Court dismiss the instant Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

        Respectfully submitted,

        AEGIS LAW GROUP LLP

By:   /s/ Oliver Garcia
        Oliver Garcia (D.C. Bar No. 456600)
        801 Pennsylvania Ave., N.W., Suite 740
        Washington, D.C. 20004
        T: 202-737-3500/F: 202-735-5071
        ogarcia@aegislawgroup.com

Dated: June 2, 2014        *Attorneys for Promesa Consulting Group, Inc.*